**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TERRY LEE FORTSON, JR., | : | Civil No. 3:24-cv-2120 |
| Petitioner | : | (Judge Mariani) |
| v. | : | |
| SUPERINTENDENT BOOHER, *et al.*, | : | |
| Respondents | : | |

**MEMORANDUM**

Petitioner Terry Lee Fortson ("Fortson") filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a judgment and conviction imposed in the Court of Common Pleas of Juniata County, Pennsylvania. (Doc. 1). For the reasons set forth below, the Court will deny the habeas petition and a certificate of appealability will not issue.

## I. Background[1]

The Pennsylvania Superior Court summarized the facts and procedural history of this case as follows:

> On March 29, 2019, Appellant and his co-defendant, Kristy LaRosa, traveled to Brookline Manor, a long-term and short-term care facility. Appellant entered Brookline Manor through the main entrance and then proceeded down the administrative hallway to the office of the activity director. Upon returning to her office, the activity director, Stephanie Stein, found Appellant standing behind the door of her office. (N.T. Trial, 9/21/20, at 26). Appellant

[1] The Court derived all pertinent facts and procedural history from the habeas petition itself, Petitioner's exhibits, and Respondents' exhibit. (Docs. 1, 1-1, 1-2, 1-3, 1-4, 36-1).

was not permitted to be in her office, and there was no reason for him to be there. (*Id.* at 25, 30). Ms. Stein led Appellant back into the hallway, where he pushed her shoulder. Ms. Stein then ducked into the business manager's office and called 911. (*Id.* at 27). After the police arrived, Ms. Stein returned to her office and noticed that the $20 bill she had taken from the ATM earlier that day was not in her wallet. (*Id.* at 32).

After the incident at Brookline Manor, Appellant and LaRosa drove to the Bargain Barn. While they were driving, Appellant gave LaRosa a $20 bill for gas money. (*Id.* at 71). She then dropped him off at the Bargain Barn and waited in her car. (*Id.*).

Alesia Dalton, an associate at Bargain Barn, testified that she saw Appellant come into the store, and then walk behind the counter, where the cash register and other paperwork is located and where the workers sort clothing. She explained that behind the counter is the business area of the store where customers are not typically allowed. (*Id.* at 47-48). Ms. Dalton asked Appellant if he needed help and he said he was looking for some jeans. (*Id.* at 45-46). Ms. Dalton recalled that she escorted him to the men's jeans section, but then left the store immediately to call her boss. She explained to her boss that Appellant was acting strange and that she wanted him to come to the store. (*Id.* at 49).

While she was outside, Ms. Dalton looked through the glass door and noticed Appellant again behind the counter, this time pushing buttons on the cash register. (*Id.* at 50). She confronted Appellant and he left without opening the cash register. (*Id.*) Ms. Dalton then called 911.

Police arrived and apprehended Appellant nearby. During his arrest, Appellant was found to be in possession of a small amount of marijuana and a glass pipe. The Commonwealth charged Appellant with burglary in connection with the Brookline Manor incident, attempted burglary in connection with the Bargain Barn incident, criminal trespass of Brookline Manor, possession of a small amount of marijuana, possession of drug paraphernalia, theft by unlawful taking, and harassment.

On September 21, 2020, a jury convicted Appellant of all charges. On December 9, 2020, the court sentenced Appellant to five to ten years of incarceration for burglary; one to two years of incarceration for attempted burglary, consecutive to the sentence for burglary; six to twelve months of

> incarceration, concurrently, for criminal trespass; fifteen to thirty days' imprisonment, concurrently, for possession of marijuana; three to six months of incarceration, concurrently, for possession of drug paraphernalia; three to six months of incarceration, concurrently, for theft by unlawful taking; and imposed a $25 fine for harassment.
>
> Appellant filed a timely post sentence motion, which the trial court denied on March 30, 2021.

(Doc. 1-2, Doc. 36-1, *Commonwealth v. Fortson*, 2023 WL 354239, at *1-2 (Pa. Super. 2023)).

Fortson filed a timely notice of appeal on April 26, 2021. (*See id.* at *2).

On January 23, 2023, the Pennsylvania Superior Court noted that Fortson raised the following issues for review:

> 1. Was the evidence at trial insufficient to prove beyond a reasonable doubt that Appellant committed the crime of burglary where the Commonwealth failed to prove that Appellant entered a portion of Brookline Manor adapted for overnight accommodations?
>
> 2. Was the evidence at trial insufficient to prove beyond a reasonable doubt that Appellant committed the crime of attempted burglary, where the Commonwealth failed to prove that Appellant entered a separately secured portion of the Bargain Barn business that was open to the public?
>
> 3. Did the trial court err in denying Appellant's post-sentence motion requesting vacated sentences, arrest of judgment and a new trial, where the verdict for the charges of burglary and theft by unlawful taking were so contrary to the weight of the evidence that it shocks one's sense of justice, where the Commonwealth's witness, Kristy LaRosa, testified that the $20.00 recovered from her was in her possession prior to criminal activity and where no witness testified that they observed Appellant in possession of the twenty-dollar bill allegedly taken from Brookline Manor?

4. Did the trial court err in failing to merge the crimes of criminal trespass and burglary for purposes of sentencing, thereby resulting in an illegal sentence?

5. Did the trial court err in failing to merge the crimes of theft by unlawful taking and burglary for purposes of sentencing, thereby resulting in an illegal sentence?

(*Id.* at *2). The Pennsylvania Superior Court affirmed Fortson's convictions but vacated the sentence imposed for his conviction of theft by unlawful taking. (*Id.*).

Fortson did not file a petition for allowance of appeal with the Pennsylvania Supreme Court, and he did not file a petition for post-conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46.

Fortson then timely filed the instant petition pursuant to 28 U.S.C. § 2254. (Doc. 1).

## II. <u>Habeas Claims Presented for Federal Review</u>

Fortson seeks habeas relief based on the following grounds:

- Ground One: "The Trial Court erred in imposing an illegal sentence on Count 6 Theft & Burglary..."

- Ground Two: Fortson's sentence is illegal due to a violation of state statute 42 Pa.C.S. § 9765, governing merger of sentences

- Ground Three: The evidence was insufficient to support his convictions of burglary and attempted burglary

- Ground Four: The trial court erred by denying Fortson's motion to quash the attempted burglary charge against him

(Doc. 1, at 5, 6, 8, 9).

## III. **Legal Standards**

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A habeas corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 68.

### A. Exhaustion and Procedural Default

A habeas petitioner must exhaust state court remedies before obtaining habeas relief. 28 U.S.C. § 2254(b)(1)(A). The traditional way to exhaust state court remedies in Pennsylvania was to fairly present a claim to the trial court, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court. *See Evans v. Court of Common Pleas, Delaware County*, 959 F.2d 1227, 1230 (3d Cir. 1992). However, in light of Pennsylvania Supreme Court Order No. 218, issued May 9, 2000, ("Order No. 218"), it is no longer necessary for Pennsylvania inmates to seek allocatur from the Pennsylvania Supreme Court in order to exhaust state remedies under 28 U.S.C. § 2254(c). *See Lambert v.*

*Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004) ("We now hold that Order No. 218 renders review from the Pennsylvania Supreme Court 'unavailable' for purposes of exhausting state court remedies under § 2254(c).").[2] The habeas petitioner has the burden of proving exhaustion. *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

A petitioner's failure to exhaust his state remedies may be excused in limited circumstances on the ground that exhaustion would be futile. *Lambert*, 134 F.3d at 518-19. Where such futility arises from a procedural bar to relief in state court, the claim is subject to the rule of procedural default. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). In addition, if the state court does not address the merits of a claim because the petitioner failed to comply with the state's procedural rules in presenting the claim, it is also procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If a claim is found defaulted, the federal court may address it only if the petitioner establishes cause for the default and prejudice resulting therefrom, or that a failure to consider the claim will result in a fundamental miscarriage of justice. *Werts*, 228 F.3d at 192. To meet the "cause" requirement to excuse a procedural default, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to

---

[2] In May 2000, the Pennsylvania Supreme Court issued an order, Order No. 218, rendering review from the Pennsylvania Supreme Court "unavailable" for purposes of exhausting state court remedies for federal habeas petitions under 28 U.S.C. § 2254(c). *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004) (interpreting *In re: Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000) ("Order No. 218")). This means that, for purposes of federal habeas review under § 2254, a person in Pennsylvania custody "need not seek review from the Pennsylvania Supreme Court" in order to have exhausted state remedies and seek federal habeas review. *Id.*

comply with the State's procedural rule." *Id.* at 192-93 (quoting and citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). Additionally, a petitioner can rely on post-conviction counsel's ineffectiveness to establish cause to overcome the default of a substantial claim of ineffective assistance of trial counsel. *Martinez v. Ryan*, 566 U.S. 1, 14 (2012). To establish prejudice, a petitioner must prove "'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Bey v. Sup't Greene SCI*, 856 F.3d 230, 242 (3d Cir. 2017).

For a petitioner to satisfy the fundamental miscarriage of justice exception to the rule of procedural default, the Supreme Court requires that the petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray*, 477 U.S. at 496). This requires that the petitioner supplement his claim with "a colorable showing of factual innocence." *McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (citing *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)). In other words, a petitioner must present new, reliable evidence of factual innocence. *Schlup*, 513 U.S. at 324.

B. Merits Standard

Once a court has determined that the exhaustion requirement is met and, therefore, that review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d). Section 2254(d) provides, in

pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Matteo v. Superintendent*, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.*

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact.

*Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); *see also Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." *Breighner v. Chesney*, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[3]). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. *Porter*, 276 F. Supp. 2d at 296; *see also Williams v. Taylor*, 529 U.S. 362, 408-09 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence

---

[3] "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. § 2254(f).

therein should the federal habeas court overturn a state court's factual determination. *Porter*, 276 F. Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-09.

## IV. Discussion[4]

### A. Ground One

In ground one, Fortson alleges that the sentence imposed for his theft and burglary conviction is illegal. (Doc. 1, at 5).

In order to be eligible for habeas corpus relief, a petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Accordingly, a claim must be "cognizable" for purposes of federal habeas review, meaning that such review is limited to determining whether a conviction violated federal law. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle,* 502 U.S. at 63. Thus, unless a deprivation of rights under state law arises to a federal due process violation, it is not cognizable on federal habeas review.

A claim of an excessive or illegal sentence is not cognizable in a federal habeas proceeding. It is generally accepted that violations of state law do not provide a basis for the grant of federal habeas relief. *See Wells v. Petsock,* 941 F.2d 253 (3d Cir. 1991).

---

4 "In considering a § 2254 petition, we review the 'last reasoned decision' of the state courts on the petitioner's claims." *Simmons v. Beard*, 590 F.3d 223, 231-32 (3d Cir. 2009) (citing *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008)). Thus, "[w]e review the appellate court decision, not the trial court decision, as long as the appellate court 'issued a judgment, with explanation, binding on the parties before it.'" *Burnside v. Wenerowicz*, 525 F. App'x 135, 138 (3d Cir. 2013). The Pennsylvania Superior Court's opinion, issued on January 23, 2023, will be the primary reference point in addressing Fortson's claims. (Doc. 1-2, Doc. 36-1, *Commonwealth v. Fortson*, 2023 WL 354239 (Pa. Super. 2023)).

Sentencing is generally a matter of state criminal procedure, which does not fall under the scope of federal habeas review. *Estelle,* 502 U.S. at 67.

In addition, this claim is moot because, as Fortson acknowledges, the state court recognized this error and vacated the sentence imposed for his conviction of theft by unlawful taking. The Superior Court found as follows:

> In his final issue, Appellant claims that his misdemeanor theft by unlawful taking conviction should have merged for sentencing with his burglary conviction. (Appellant's Brief at 29-30). Both the trial court and Commonwealth agree that the charges should have merged for sentencing. (*See* Trial Court Opinion at 7; Commonwealth's Brief at 16). We agree.
>
> Section 3502(d) of the Crimes Code states: "A person may not be sentenced both for burglary and for the offense which it was his intent to commit after the burglarious entry or for an attempt to commit that offense, unless the additional offense constitutes a felony of the first or second degree." 18 Pa.C.S.A. § 3502(d). *See also Commonwealth v. Diaz*, 867 A.2d 1285, 1288 (Pa. Super. 2005) (holding that theft that occurred during course of burglary merges with corresponding burglary).
>
> Based on the language of Section 3502(d), we agree with the parties that Appellant should not have been sentenced for both the burglary and the misdemeanor theft conviction. Accordingly, we affirm Appellant's convictions but vacate only his sentence of three to six months of incarceration for theft. However, because this sentence was imposed concurrent to the remainder of Appellant's sentences, vacating Appellant's theft sentence does not upset the trial court's sentencing scheme. Therefore, we are not required to remand to the trial court. *See Commonwealth v. Thur*, 906 A.2d 552, 569 (Pa. Super. 2006), *appeal denied*, 596 Pa. 745, 946 A.2d 687 (2008) (stating: "[I]f our decision does not alter the overall scheme, there is no need for a remand") (citation omitted).

(Doc. 1-2, Doc. 36-1, *Commonwealth v. Fortson*, 2023 WL 354239, at *6-7).

Forston's challenge in ground one is both non-cognizable and moot. He is not entitled to relief on this claim.

B. Ground Two

Fortson asserts in ground two that his burglary and criminal trespass convictions should have merged for sentencing purposes, pursuant to 42 Pa.C.S.A. § 9765. (Doc.1, at 6). As stated, a state prisoner may seek federal habeas corpus relief only if he is in custody in violation of the United States Constitution or federal law. *See* 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67-68 (stating it is not the province of federal court to re-examine state court determinations on state law questions). Fortson's merger argument is an issue of state law, and not cognizable in a federal habeas petition.

However, because such sentence merger arguments can, in some instances, implicate the Fifth Amendment Double Jeopardy Clause's prohibition against cumulative sentences for a single offense, it has been held that state law sentencing merger claims may require Double Jeopardy analysis on federal habeas corpus review. *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 229 (3d Cir. 2017).

With respect to the Double Jeopardy inquiry, the first, legal component of this analysis is:

> The Double Jeopardy Clause of the Fifth Amendment prescribes that "[n]o person shall be ... subject for the same offence to be twice put in jeopardy of life or limb," U.S. Const. amend. V, and it "protects not only against a second trial for the same offense, but also against multiple punishments for the same offense," *Whalen v. United States*, 445 U.S. 684, 688, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) (internal quotation marks omitted). To assess whether

> two crimes constitute the "same offense" for double jeopardy purposes, we employ the test established by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). That is, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. 180. If this test yields "only one" offense, "cumulative sentences are not permitted, unless elsewhere specially authorized by Congress." *Whalen*, 445 U.S. at 693, 100 S. Ct. 1432.

*Wilkerson*, 871 F.3d at 229-30.

Second, there is a factual element to this assessment. Double Jeopardy principles are not offended by the prosecution of "distinct and separate [acts] at different times" as separate offenses, provided the statute treats each act as a distinct violation. *Blockburger v. United States*, 284 U.S. at 301.

By incorporating this legal and factual analysis evaluation in Double Jeopardy, federal case law parallels the legal standards governing merger of offenses under state law. The state law sentencing merger guidelines are set forth in 42 Pa.C.S. § 9765:

> The statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other.

*Commonwealth v. Baldwin*, 604 Pa. 34, 985 A.2d 830, 833 (2009). The Third Circuit has held that "there is no difference between a double jeopardy analysis and a merger analysis: double jeopardy and merger are identical." *Harmon v. Lamar*, 640 F. App'x 175, 179 (3d Cir. 2016) (citing *Commonwealth v. Anderson*, 538 Pa. 574, 650 A.2d 20, 23 (1994)).

This Court concludes that the Pennsylvania Superior Court's determination that Fortson was not entitled to merger of his burglary and criminal trespass convictions was appropriate. As the Superior Court noted:

> In his fourth issue, Appellant argues the trial court imposed an illegal sentence when it failed to merge for sentencing purposes Appellant's burglary and criminal trespass convictions. Therefore, Appellant claims the sentence imposed is an illegal sentence which must be vacated. (Appellant's Brief at 26-28). We disagree.
>
> A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law. *Commonwealth v. Allen*, 24 A.3d 1058, 1062 (Pa. Super. 2011). Accordingly, our standard of review is *de novo* and our scope of review is plenary. *Id.*
>
> Our legislature has addressed the mandatory merger of crimes for the purpose of sentencing in Section 9765 of the Sentencing Code, which provides:
>
> § 9765. Merger of sentences
>
>> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.
>
> 42 Pa.C.S.A. § 9765. Concerning the appropriate test for merger of crimes for sentencing, "[t]he statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." *Commonwealth v. Baldwin*, 604 Pa. 34, 39, 985 A.2d 830, 833 (2009). However, "there is no merger if each offense requires proof of an element the other does not." *Commonwealth v. Quintua*, 56 A.3d 399, 401 (Pa. Super. 2012), *appeal denied*, 620 Pa. 730, 70 A.3d 810 (2013) (citations omitted).

> In *Quintua, supra*, this Court considered the same issue raised in this matter, whether criminal trespass and burglary should merge for sentencing purposes. There, the court concluded that:
>
> > [e]xamining the elements of criminal trespass, a conviction for that offense requires a person: (1) to break or enter into with subterfuge any building or occupied structure; (2) knowing he is not licensed or privileged to do so. *See* 18 Pa.C.S.A. § 3503(a)(1). On the other hand, to commit burglary, a person must: (1) enter a building or occupied structure; (2) with intent to commit a crime therein. *See* 18 Pa.C.S.A. § 3502(a). The plain language of the respective statutes demonstrates why they do not merge. Criminal trespass contains an element of knowledge—a person committing that offense must know he is not privileged to enter the premises. Burglary has no such knowledge requirement. Burglary does, however, require intent to commit a crime within the premises, an element that criminal trespass lacks. As each offense requires proof of an element the other does not, the sentences should not merge.
>
> *Id.* at 402 (case citation omitted).
>
> Based on the discussion and holding in *Quintua*, Appellant's argument is meritless. His sentences for burglary and criminal trespass do not merge. Thus, Appellant's fourth issue merits no relief.

(Doc. 1-2, Doc. 36-1, *Commonwealth v. Fortson*, 2023 WL 354239, at *5-7 (footnotes omitted)).

As the state court noted, criminal trespass contains an element of knowledge, while burglary does not. The state court also noted that burglary requires intent to commit a crime within the premises, while criminal trespass does not. This Court agrees that the statutory elements of these charges differ in material ways. Therefore, merger of these offenses at sentencing was not compelled by state law, and separate punishments for these separate

crimes did not violate the Fifth Amendment's protections against Double Jeopardy. Fortson is not entitled to relief on ground two.

C. Ground Three

In ground three of the habeas petition, Fortson alleges that the evidence was insufficient to support his convictions of burglary and attempted burglary. (Doc. 1, at 8).

The "clearly established Federal law" governing sufficiency of the evidence claims is set forth in the United States Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979). Under *Jackson*, evidence is sufficient to support a conviction if, "after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (quoting *Jackson*, 443 U.S. at 319).

On direct appeal, Fortson argued that the evidence was insufficient to support his convictions for burglary and attempted burglary. (Doc. 1-2, Doc. 36-1, *Commonwealth v. Fortson*, 2023 WL 354239, at *2-4). In affirming the judgment of sentence, the Superior Court rejected Fortson's sufficiency of the evidence claim and found as follows:

> Appellant's first two issues concern the sufficiency of the evidence to support his convictions for burglary and attempted burglary. In reviewing a challenge to the sufficiency of the evidence, our well-settled standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa. Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013)).

In his first issue, Appellant argues that the Commonwealth failed to prove that the structure he entered at Brookline Manor was adapted for overnight accommodations. Specifically, Appellant claims the area of Brookline Manor which he entered was an administrative wing, separate from the portion of the building adapted for overnight accommodations and not part of the living spaces dedicated to the residents. Appellant insists that because the evidence adduced at trial did not establish that he entered any portion of the residential wings, the Commonwealth failed to prove the overnight accommodation element necessary to support his burglary conviction. (Appellant's Brief at 18-19). We disagree.

The version of Section 3502 of the Crimes Code that was in effect at the time of Appellant's offenses defines burglary, in relevant part, as follows:

> § 3502. Burglary
>
> (a) Offense defined.— A person commits the offense of burglary if, with the intent to commit a crime therein, the person:
>
> (1)(i) enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight accommodations in which at the time of the offense any person is present and the person commits, attempts or threatens to commit a bodily injury crime therein;

18 Pa.C.S.A. § 3502(a)(1)(i) (effective Jan. 3, 2017 to September 8, 2022).

"To determine whether a structure is adapted for overnight accommodation, a court considers 'the nature of the structure itself and its intended use, and not whether the structure is in fact inhabited.'" *Commonwealth v. Rivera*, 983 A.2d 767, 769 (Pa. Super. 2009), *appeal denied*, 606 Pa. 647, 992 A.2d 888 (2010) (quoting *Commonwealth v. Nixon*, 801 A.2d 1241, 1247 (Pa. Super. 2002)).

In *Rivera, supra*, this Court considered whether evidence established that a structure was adapted for overnight accommodation. There, the structure in question was the complainant's basement which was "accessed only through an exterior entrance" but was "below the apartments under the same roof, and the complainant use[d] it to store personal belongings." *Id.* at 770-71. This Court noted that the fact that the basement was accessible only through a separate exterior entrance "does not sever it from the rest of the house." *Id.* at 771. The Court held that the basement was functionally connected to the rest of the house and was habitable itself, therefore meeting the definition of a place adapted for overnight accommodations. *Id. Compare Commonwealth v. Waters*, 988 A.2d 681, 684 (Pa. Super. 2009) (holding Commonwealth failed to show that the "building, structure or portion entered was part of the living space of the larger structure or was otherwise adapted for overnight accommodation," where Commonwealth produced no evidence that: tenants of apartments had keys or access to basements burglarized by defendants, (2) basements were part of living space of houses for any of tenants, or (3) basements were otherwise accommodated for overnight accommodation,

*e.g.,* had running water or electricity, contained bed or any other furniture, etc.).

Instantly, the Commonwealth produced evidence that Brookline Manor is a care facility with a capacity for housing 85 patients. The building has one main entrance which then branches off into three hallways: one for long-term care, one for short-term care, and an administrative hallway. (N.T. Trial at 25). The administrative hallway has four offices and a restroom. Ms. Stein testified that her office, which Appellant entered, has hooks for coats, a bookcase with a microwave and refrigerator on it, and her desk. (*Id.* at 28-29).

Viewed in the light most favorable to the Commonwealth as verdict winner, the evidence was sufficient to sustain Appellant's burglary conviction. *Sebolka, supra*. Brookline Manor provides overnight accommodations for up to 85 patients. The administrative wing of that facility uses the same main entrance as the patient care wings. The areas are within one contiguous structure, which has been adapted for overnight accommodation. Significantly, the administrative wing is not severed from the rest of the facility. Moreover, Ms. Stein's office within the administrative wing contained a desk, coat hooks, a bookcase, a microwave, and a refrigerator. As such, we conclude that Brookside Manor, including Ms. Stein's office within the administrative wing, meets the definition of a place adapted for overnight accommodation. *See Rivera, supra*. Therefore, the evidence support's Appellant's conviction for burglary. Appellant's first issue merits no relief.

In his second issue, Appellant challenges the sufficiency of the evidence to support his conviction for attempted burglary of the Bargain Barn. Appellant claims that the Commonwealth failed to establish that the portion of the Bargain Barn he entered where the cash register was located was not a separately secured or occupied portion of the business. (Appellant's Brief at 19-20). Appellant alleges that the store was open to the public when he entered, and the counter with the cash register was not blocked off in any way from the parts of the store that were open to the public. Appellant concludes the evidence was insufficient to prove he was guilty of attempted burglary, and this Court must grant relief. We disagree.

An individual commits the offense of attempted burglary under the subsection charged if "with the intent to commit a crime therein, the person…enters a building or occupied structure, or separately secured or occupied portion

> thereof that is not adapted for overnight accommodations in which at the time of the offense any person is present[.]" 18 Pa.C.S.A. § 3502(a)(3) (effective Jan. 3, 2017 to September 8, 2022).
>
> Although there is a dearth of case law specifically analyzing "separately secured" for purposes of the burglary statute, this Court has considered such language for purposes of the criminal trespass statute. *See, e.g., Commonwealth v. Cook*, 547 A.2d 406, 409 (Pa. Super. 1988) (affirming appellant's conviction for criminal trespass where appellant entered stockroom which had closed door that was secured by unlocked padlock); *Commonwealth v. White*, 538 A.2d 887, 888 (Pa. Super. 1988) (holding that ladies' room entered by appellant was separately secured or occupied portion of country club).
>
> Here, the record demonstrates that the area behind the cashier's register was a separately secured portion of the store, akin to an "employee's only" section where store patrons are not permitted. On this record and viewed in the evidence most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to convict Appellant of attempted burglary. *See Sebolka, supra*. Appellant's second issue merits no relief.

(Doc. 1-2, Doc. 36-1, *Commonwealth v. Fortson*, 2023 WL 354239, at *2-4 (footnote omitted)).

Clearly, the state court applied the Pennsylvania equivalent of the *Jackson* standard. *See Evans*, 959 F.2d at 1233 (noting that the test for sufficiency of the evidence is the same under both Pennsylvania and federal law). Because the Superior Court applied the correct legal standard, its adjudication satisfies review under the "contrary to" clause of § 2254(d)(1). *See, e.g., Williams*, 529 U.S. at 405-06.

The Court next considers whether the state court's decision amounted to an "unreasonable application" of *Jackson.*

> *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury...to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the [trial court's] verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the [trial court]." *Cavazos v. Smith*, 565 U.S. 1 (2011). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766 (2010)).
>
> \- - -
>
> [T]he only question under *Jackson* is whether [the state court's] finding was so insupportable as to fall below the threshold of bare rationality. The state court of last review did not think so, and that determination in turn is entitled to considerable deference under AEDPA, 28 U.S.C. § 2254(d).

*Coleman*, 566 U.S. at 651, 656.

In considering this issue, the Superior Court found that the Commonwealth established the elements of burglary and attempted burglary. (Doc. 1-2, Doc. 36-1, *Commonwealth v. Fortson*, 2023 WL 354239, at *2-4). With respect to the burglary charge, the Superior Court noted that the Commonwealth must prove the overnight accommodation element of the crime. (*Id.*). The Superior Court stated that "[t]o determine whether a structure is adapted for overnight accommodation, a court considers 'the nature of the structure itself and its intended use, and not whether the structure is in fact inhabited.'" (*Id.* at *3 (citing *Commonwealth v. Rivera*, 983 A.2d 767, 769 (Pa. Super. 2009)). The Superior Court found that the evidence was sufficient to sustain the burglary conviction because Brookside Manor, including Ms. Stein's office in the administrative wing, met the definition of a place adapted for overnight accommodation. (*Id.* at *4). In so finding, the state court

noted that: Brookline Manor provides overnight accommodations for up to 85 patients; the administrative wing uses the same main entrance as the patient care wings; the areas are within one contiguous structure, adapted for overnight accommodation; the administrative wing is not severed from the rest of the facility; and Ms. Stein's office in the administrative wing contained a desk, coat hooks, a bookcase, a microwave, and a refrigerator. (*Id.*).

With respect to the attempted burglary charge, the Superior Court noted that the Commonwealth must prove that a person is guilty of attempted burglary if "with the intent to commit a crime therein, the person…enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense any person is present[.]" (*Id.*) (citing 18 Pa.C.S.A. § 3502(a)(3)). The Commonwealth presented evidence that the area behind the cashier's register was a separately secured portion of the store and was an employee's section where store patrons were not allowed. (*Id.*). The Superior Court concluded that the Commonwealth presented sufficient evidence to sustain the attempted burglary conviction. (*Id.*).

Fortson failed to establish that the state court's reliance on the above evidence "was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 566 U.S. at 656.

"28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not

by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Indeed, under the *Jackson* standard, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup*, 513 U.S. at 330. The proper question is not whether the witnesses were credible, but "whether there is sufficient evidence which, if credited, could support the conviction." *Id.* Further, *Coleman* cautioned courts that *Jackson* does not permit "imping[ing] on the jury's role as factfinder" through "fine-grained factual parsing." *Coleman*, 566 U.S. at 655. Rather, "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.' [*Jackson*, 443 U.S.] at 319." *Id.*

Taking into consideration all of this evidence as a whole, and viewing the evidence in the light most favorable to the prosecution, the Court finds that the state court's conclusion that there was sufficient evidence at trial to establish the necessary elements of burglary and attempted burglary, and to sustain the verdict, is not objectively unreasonable. *Jackson*, 443 U.S. at 319. There simply is no possibility that fair-minded jurists could find that this determination conflicts with applicable Supreme Court precedent. Nor, based on review of the state court evidence, is it an unreasonable determination of the facts. "Affording due respect to the role of the jury and the state courts," *Coleman*, 566 U.S. at 656, Fortson's sufficiency of the evidence claim fails.

D. Ground Four

In ground four, Fortson alleges that the trial court erred by denying his motion to quash the attempted burglary charge against him. (Doc. 1, at 9). This claim is procedurally defaulted and was never properly presented to the state courts for a merits review. As stated, Fortson presents the following claims in his federal habeas petition:

- Ground One: "The Trial Court erred in imposing an illegal sentence on Count 6 Theft & Burglary..."
- Ground Two: Fortson's sentence is illegal due to a violation of state statute 42 Pa.C.S. § 9765, governing merger of sentences
- Ground Three: The evidence was insufficient to support his convictions of burglary and attempted burglary
- Ground Four: The trial court erred by denying Fortson's motion to quash the attempted burglary charge against him

(Doc. 1, at 5, 6, 8, 9).

In his direct appeal in state court, Fortson raised the following five issues:

1. Was the evidence at trial insufficient to prove beyond a reasonable doubt that Appellant committed the crime of burglary where the Commonwealth failed to prove that Appellant entered a portion of Brookline Manor adapted for overnight accommodations?

2. Was the evidence at trial insufficient to prove beyond a reasonable doubt that Appellant committed the crime of attempted burglary, where the Commonwealth failed to prove that Appellant entered a separately secured portion of the Bargain Barn business that was open to the public?

3. Did the trial court err in denying Appellant's post-sentence motion requesting vacated sentences, arrest of judgment and a new trial, where the verdict for

> the charges of burglary and theft by unlawful taking were so contrary to the weight of the evidence that it shocks one's sense of justice, where the Commonwealth's witness, Kristy LaRosa, testified that the $20.00 recovered from her was in her possession prior to criminal activity and where no witness testified that they observed Appellant in possession of the twenty-dollar bill allegedly taken from Brookline Manor?
>
> 4. Did the trial court err in failing to merge the crimes of criminal trespass and burglary for purposes of sentencing, thereby resulting in an illegal sentence?
>
> 5. Did the trial court err in failing to merge the crimes of theft by unlawful taking and burglary for purposes of sentencing, thereby resulting in an illegal sentence?

(Doc. 1-2, Doc. 36-1, *Commonwealth v. Fortson*, 2023 WL 354239, at *2).

It is clear that Fortson's federal habeas claim in ground four (that the trial court erred in denying his motion to quash the attempted burglary charge) was not presented on direct appeal in state court. Furthermore, Fortson did not file a PCRA petition in state court.

As a result, Fortson's failure to properly pursue his federal habeas claim in ground four in state court constitutes a procedural default of the claim. Fortson can overcome procedural default with a showing of "cause and prejudice" or by showing a "fundamental miscarriage of justice." *Werts*, 228 F.3d at 192 (quoting *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir.2000) (quoting *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999)); *see also Coleman*, 501 U.S. at 750 (applying "cause and prejudice" standard to district court review of habeas petitions). To show "cause," a petitioner must establish that "some objective factor external to the defense impeded counsel's [or petitioner's] efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. "Prejudice" requires that the "habeas

petitioner…show 'not merely that the errors at…trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in original). Fortson has failed to present any sufficient argument to excuse his default of his claim in ground four. (*See* Doc. 1). Accordingly, the Court finds that Fortson's procedural default of the claim in ground four should not be excused, and the claim is barred from federal review.

Furthermore, any attempt by Fortson to exhaust his state remedies at this time would be futile because the claim is procedurally defaulted due to waiver of the claim and the expiration of the PCRA statute of limitations. *See* PA. R. APP. P. 903(a) (time for filing a direct appeal); 42 PA. CONS. STAT. ANN. § 9544(b) ("For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding"); 42 PA. CONS. STAT. ANN. § 9545(b) ("Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final"). Fortson is therefore in procedural default for failing to comply with the state filing requirements.

## V. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding

under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. When a district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In addition,

> [w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Id.* Fortson failed to demonstrate that a certificate of appealability should issue.

Accordingly, the Court will not issue a certificate of appealability.

## VI. Conclusion

The Court will deny the § 2254 petition for a writ of habeas corpus. (Doc. 1). A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: September 28, 2026